2022 IL App (1st) 200719

FIFTH DIVISION
May 27, 2022

No. 1-20-0719

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17 CR 17697 |
| CRAIG HARTFIELD, | ) ) ) | Honorable Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court with opinion.
Justices Hoffman and Cunningham in the judgment and opinion.

**OPINION**

¶ 1     Following a bench trial, defendant Craig Hartfield was convicted of two counts of predatory criminal sexual assault, one count of aggravated criminal sexual assault, and two counts of criminal sexual assault. The circuit court sentenced him to an aggregate term of 76 years' imprisonment. On appeal, defendant contends that he received ineffective assistance of counsel based upon counsel's failure to move to dismiss the aggravated criminal sexual assault count as time-barred. We reverse defendant's conviction for aggravated criminal sexual assault and remand this cause for sentencing on the lesser-included offense of criminal sexual assault.

¶ 2                                   BACKGROUND

¶ 3     This case illustrates the importance of precisely drafting criminal indictments. On December 13, 2017, the State charged defendant with three counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2002)), one count of aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(2) (West 2016)), four counts criminal sexual assault with force (720 ILCS 5/12-13(a)(1) (West 2008); 720 ILCS 5/11-1.20(a)(1) (West 2016)), and three counts of criminal sexual assault of a family member (720 ILCS 5/12-13(a)(3) (West 2008)). The charges stemmed from allegations that defendant committed multiple acts of sexual abuse against his daughter, T.H., beginning when she was nine years old. In particular, count IV of the indictment, which charged defendant with aggravated criminal sexual assault, alleged that, on or about July 2, 2007, and "continuing on through" February 25, 2016, defendant:

> "knowingly committed an act of sexual penetration upon C.H.,[1] to
>
> wit: contact between Craig Hartfield's penis and T.H.'s sex organ,
>
> by the use of force or threat of force, and Craig Hartfield caused
>
> bodily harm to T.H., to wit: pregnancy,
>
>     and the statute of limitations for this prosecution is extended
>
> *** in that this prosecution has commenced within ten (10) years of
>
> the commission of the offense and T.H. reported the offense to law
>
> enforcement authorities within three (3) years after the commission
>
> of the offense."

---

[1]Although the indictment erroneously states that defendant committed the act of sexual penetration on "C.H.," defense counsel at oral argument did not dispute our characterization that this was a mere typographical error. The subsequent references to the specific acts and injuries in the charging instrument only refer to T.H.

Count VIII of the indictment charged defendant with simple, not aggravated, criminal sexual assault. Count VIII also charged defendant with contact between his penis and T.H.'s sex organ by the use of force or threat of force—but it did not contain the additional allegation "and Craig Hartfield caused bodily harm to T.H., to wit: pregnancy." Other than the removal of the 11-word clause referring to pregnancy, counts IV and VIII were textually identical.

¶ 4     At trial, T.H. testified that she was born on June 2, 1989, that defendant was her father, and that she had three younger sisters: C.H., A.H., and R.H. T.H. stated that she and her sisters lived with defendant and her mother Dorothy on South Indiana Avenue in Chicago at the time of the offenses. T.H. has two children, K.H., who was seven years old at the time of trial, and M.P.

¶ 5     T.H. stated that, one night when she was nine years old, defendant came into the bedroom she was sharing with her sisters and began to "fondle" her by touching her vagina under her underwear with his hands. Later, when she was "nine or ten," defendant then came into her bedroom and touched her vagina with his hands and then his mouth. T.H. estimated that defendant put his mouth on her vagina "maybe once or twice a week." Then, when T.H. was 11 years old, defendant went into her room, placed a knife against her throat, ordered her to quietly follow him out of the room and lie down on a couch in the front room, where he vaginally penetrated her with his penis. T.H. said that she was initially on her back, and then defendant told her to turn over onto her hands and knees, at which point he penetrated her again with his penis and then ejaculated onto her back. T.H. said that defendant said nothing to her during or after the assault.

¶ 6     Next, when T.H. was "12 or 13," her mother was going to take T.H. and her sisters to a Halloween party, but before everyone left, defendant said that T.H. could not go. After everyone else left, defendant brought T.H. to the front room and told her he wanted to "try something." Defendant then took out his erect penis, placed it in T.H.'s mouth, and started "moving back and

forth" until she turned her head away, gagging. T.H. said that, later that day before everyone returned from the Halloween party, defendant forced her to try again in the bathroom. Defendant had T.H. sit on the toilet while he placed his penis in her mouth until he ejaculated. T.H. stated that, afterward, defendant seemed apologetic and told her that she would not have to do that anymore. Around that same time, T.H. spoke to her sister C.H. about the abuse. T.H. further stated that, although she wrote a letter to her school counselor about the abuse when she was in eighth grade, defendant found the letter, took it, and told her and C.H. that, if T.H. had given the letter to the counselor, T.H. and her sisters would have been separated and placed in foster care. Defendant then "home schooled" T.H. after the eighth grade.

¶ 7     When T.H. was 14 and 15 years old, defendant would come into her room at night, take her to the front room and have sexual intercourse with her. T.H. said this typically occurred "about three, maybe four times a week." T.H. added that defendant would occasionally also have sexual intercourse with her in his and her mother's bedroom if either no one was home during the day or if everyone else was in the front room, kitchen, or "otherwise occupied." When T.H. was 18 or 19, defendant then began penetrating her anus with his penis in the front room at night. T.H. said that these incidents also took place "a few times over maybe a couple of years."

¶ 8     In March 2012, when T.H. was "22 or 23," T.H. discovered that she was pregnant. Although defendant told T.H. to keep it a secret, she told C.H. T.H. never saw a doctor during her pregnancy and did not obtain any prenatal care. T.H. ultimately gave birth to K.H. in October 2012. T.H. said that defendant drove her and C.H. to a secluded spot near his workplace where she gave birth in the backseat of the car. After she gave birth, T.H. stated that there were "maybe one or two" additional sexual acts between defendant and her. T.H. believed that defendant did not want to risk getting T.H. pregnant again.

¶ 9       On February 25, 2016, T.H., her sisters, K.H., and C.H.'s son (E.H.) left their house and went to a domestic violence shelter. T.H. did not immediately go to the police, however, because she and her sisters "just wanted to leave it behind" and start "living our own lives." Nonetheless, T.H. went to the police in August 2017 because defendant refused to let their mother leave.

¶ 10      On cross-examination, T.H. admitted that she did not leave the house until after she had turned 21 years old. T.H. further conceded that she never told anyone at school or in her neighborhood about defendant assaulting her. On redirect examination, T.H. explained that she believed defendant when he told her that the family would be separated and her mother would go to jail. T.H. added that she did not want to leave her sisters behind for fear that defendant would use them to "replace" her and start assaulting them. T.H. also stated, "we tried leaving a few times before," but defendant would block the door and tell them they had nothing and nowhere to go.

¶ 11      Following T.H.'s testimony, the State presented evidence that a DNA test revealed that there was a 99.999% chance that defendant was the father of K.H. The State then rested its case. Defendant elected not to testify, and the defense elicited the testimony of defendant's niece, who stated that she met T.H. and her sisters, as well as K.H. and E.H., when they were about three years old. The defense then rested its case.

¶ 12      After the parties presented their closing arguments, the circuit court found defendant guilty of, *inter alia*, count IV, alleging aggravated criminal sexual assault with the specified bodily harm of pregnancy, and count VIII, which alleged criminal sexual assault predicated upon sexual contact between defendant's penis and T.H.'s sex organ but did not allege any specific bodily harm such as pregnancy.

¶ 13      The circuit court subsequently held a sentencing hearing. Following the arguments of the parties, the court sentenced defendant to an aggregate term of 76 years' imprisonment, which

included a consecutive 20-year sentence for the aggravated criminal sexual assault conviction (count IV), but the court did not impose a sentence for the conviction on count VIII. Instead, the court merged count VIII into count IV. This appeal follows.

¶ 14                                    ANALYSIS

¶ 15    Defendant's sole contention is that his trial counsel rendered constitutionally ineffective assistance for failure to file a pretrial motion seeking dismissal of count IV as time-barred. Defendant argues that, although the extended statute of limitations allows for the prosecution of aggravated criminal sexual assault up to 10 years after the offense if the victim reports the offense to law enforcement within 3 years of the commission of the offense, the victim in this case did not report her offense within 3 years. Defendant concludes that trial counsel rendered objectively unreasonable assistance in failing to file the motion and that he was prejudiced by this omission because the charge would have been dismissed.

¶ 16    Both the federal and state constitutions guarantee criminal defendants the right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To establish ineffective assistance of counsel, a defendant must show both a deficiency in counsel's performance and prejudice resulting from that deficiency. *People v. Crawford*, 2013 IL App (1st) 100310, ¶ 129 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984) (adopting *Strickland*)). In other words, pursuant to *Strickland*, a defendant must show the following to prevail on a claim of ineffective assistance: (1) counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance so prejudiced the defense as to deny the defendant a fair trial. *Id.* (citing *People v. Nowicki*, 385 Ill. App. 3d 53, 81 (2008), citing *Strickland*, 466 U.S. at 687).

¶ 17 To meet the first prong of objectively unreasonable performance, a defendant must overcome the " 'strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence.' " *Id.* ¶ 130 (quoting *People v. Coleman*, 183 Ill. 2d 366, 397 (1998)). To meet the second prong of prejudice, a defendant must show a reasonable probability, *i.e.*, " 'a probability sufficient to undermine confidence in the outcome,' " that, but for defense counsel's deficient performance, the result of the trial would have been different. *Id.* (quoting *Strickland*, 466 U.S. at 694); see also *People v. Houston*, 226 Ill. 2d 135, 144 (2007).

¶ 18 Failure to show either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Crawford,* 2013 IL App (1st) 100310, ¶ 130 (citing *Strickland*, 466 U.S. at 687). Whether defendant received ineffective assistance of counsel is a mixed question of fact and law. *Id.* (citing *Strickland*, 466 U.S. at 698). Therefore, although we must defer to the circuit court's factual findings, we review *de novo* the ultimate legal issue of whether counsel's omission supports an ineffective assistance claim. *Id.*

¶ 19 Section 11-1.20 of the Criminal Code of 2012 (Code) defines criminal sexual assault as an act of sexual penetration through the use or threat of force. 720 ILCS 5/11-1.20(a)(1) (West 2016). Section 11-1.30 of the Code provides in relevant part that an accused commits aggravated criminal sexual assault if he commits criminal sexual assault and causes bodily harm to the victim. *Id.* § 11-1.30(a)(2). Bodily harm is defined as "physical harm, and includes, but is not limited to, sexually transmitted disease, pregnancy, and impotence." *Id.* § 11-0.1. The term "bodily harm" in the context of an aggravated criminal sexual assault case has the same meaning as under the battery statute. *People v. Johnson*, 2015 IL App (1st) 123249, ¶ 31 (citing *People v. Bishop*, 218 Ill. 2d 232, 249-50 (2006)). Bodily harm, while "difficult to pinpoint exactly," requires "some sort of

physical pain or damage to the body, like lacerations, bruises[,] or abrasions, whether temporary or permanent." *People v. Mays*, 91 Ill. 2d 251, 256 (1982); accord *Bishop*, 218 Ill. 2d at 250. To determine whether an accused's actions caused bodily harm, the trier of fact may both consider direct evidence of injury and also infer an injury based upon circumstantial evidence "in light of common experience." *Bishop*, 218 Ill. 2d at 250.

¶ 20    Ordinarily, the State must commence prosecution for aggravated criminal sexual assault "within 3 years after the commission of the offense." 720 ILCS 5/3-5(b) (West 2016). Section 3-6 of the Code, however, provides that the State may commence prosecution for aggravated criminal sexual assault within 10 years of the commission of the offense "if the victim reported the offense to law enforcement authorities within 3 years after the commission of the offense." *Id.* § 3-6(i). It is well established that the precise allegation and proof of time or date are not necessary; instead, the charging document must allege that "the crime was committed at some time prior to the return of the indictment *** and within the period fixed by the statute of limitations." *People v. Strait*, 72 Ill. 2d 503, 505-06 (1978). Where, as here, however, the State proceeds on a theory that the accused had engaged in a continuous course of aggravated criminal sexual assault, the offense is not complete "until the last act was accomplished." *People v. McDade*, 345 Ill. App. 3d 912, 915 (2004).

¶ 21    In this case, the State charged defendant by indictment with aggravated criminal sexual assault based upon the infliction of bodily harm, "to wit: pregnancy." In *People v. Wilson*, 24 Ill. 2d 598 (1962), our supreme court observed that, "Where an alleged fact is preceded by 'to-wit,' it is said to be laid under a *videlicet*." *Id.* at 601 (citing *People v. Rivas*, 5 Ill. 2d 556 (1955)). The court further explained that the use of a *videlicet* in " 'every species of pleading' " allows the pleader to " 'fix with certainty that, which before, was general, and which, without such

explanation, might with equal propriety have been applied to different objects.' " *Id.* (quoting *People v. Shaver*, 367 Ill. 339 (1937)).

¶ 22    *Rivas* provides guidance on the issue presented here. There, the State indicted the defendant for "the sale on June 28, 1952, of 'a large amount, to-wit: six capsulefuls of a certain narcotic drug.' " *Rivas*, 5 Ill. 2d at 562. The court noted that based upon the record, the defendant was convicted of the sale of six capsulefuls of heroin on June 28, but the only evidence sufficient to sustain a conviction related to two sales of heroin on June 27, neither of which involved the sale of six capsules or any other specific number of capsules. *Id.* at 563. Accordingly, the court held that the State failed to prove the offense as charged in the indictment and reversed the defendant's conviction. *Id.* at 564.

¶ 23    Here, although the State alleged a continuing course of conduct in the preface of the indictment, the charge itself alleges "an act" of sexual penetration resulting in a specific type of bodily harm, pregnancy. This "last act" was "accomplished" in October 2012, when K.H. was born. See *McDade*, 345 Ill. App. 3d at 915. To stay within the extended statute of limitations, the offense had to be reported to law enforcement within three years of that date, or October 2015. Since the victim did not report this offense until August 2017 and the State failed to allege and prove bodily harm that took place within the three-year statute of limitations, the State was time-barred from prosecuting this particular offense. On these facts, defendant has overcome the strong presumption that trial counsel's failure to seek discharge of count IV was the product of a sound trial strategy and not incompetence. See *Crawford*, 2013 IL App (1st) 100310, ¶ 130. Therefore, trial counsel rendered objectively unreasonable assistance, and defendant's claim satisfies the first prong of *Strickland*.

¶ 24    In addition, defendant has met the prejudice prong. Defendant suffered prejudice from trial counsel's failure to move to discharge this count when he was convicted and subsequently sentenced to a consecutive 20-year prison term. Although the victim in this case testified that defendant raped her at least "one or two times" after the birth of her son, the State indicted defendant for "an act" of aggravated criminal sexual assault predicated upon bodily harm, "to wit: pregnancy." Therefore, even if those one or two additional acts took place within three years of the victim's outcry to law enforcement, that would not preserve a valid conviction on count IV, which specifically alleged pregnancy and nothing else as the bodily harm.

¶ 25    Notably, there is no evidence that, following the birth of K.H. in October 2012, the victim again became pregnant by defendant within the three years prior to her outcry on August 29, 2017. In addition, the State elicited no additional evidence regarding the one or two additional attacks, which stands in stark contrast to the detailed testimony the State elicited for the time period preceding the victim's pregnancy. Faced with a pretrial motion to dismiss the indictment on count IV as time-barred, it is highly unlikely the State would have been able to amend or otherwise revive this charge. As stated above, to meet the prejudice prong of *Strickland*, defendant must show a reasonable probability, *i.e.*, " 'a probability sufficient to undermine confidence in the outcome,' " that, but for this error, the result of his trial would have been different. *Id.* (quoting *Strickland*, 466 U.S. at 694). Under the facts presented, defendant has shown prejudice as required by *Strickland*.

¶ 26    Finally, we are not persuaded by the State's reliance upon *People v. Stone*, 374 Ill. App. 3d 980 (2007), *McDade*, 345 Ill. App. 3d 912, *People v. Griffith*, 249 Ill. App. 3d 1046 (1993), and *Strait*, 72 Ill. 2d 503. The first three cases are factually distinct because they all allege multiple acts occurring during the time frames alleged in the charging instruments. See *Stone*, 374 Ill. App. 3d at 982 (describing various "incidents" of abuse); *McDade*, 345 Ill. App. 3d at 913 (noting the

defendant abused the victim "numerous times"); *Griffith*, 249 Ill. App. 3d at 1047-48 (uninterrupted child abduction from 1981 until 1989). Here, although the State alleged the aggravated criminal sexual assault of the victim took place over a lengthy span of time, the bodily harm, *i.e.*, pregnancy, was a single instance that took place in 2012, well before the filing of the indictment in 2017 and well beyond the statute of limitations. In *Strait*, the supreme court affirmed the appellate court's *reversal* of the defendant's conviction for indecent liberties with a child. *Strait*, 72 Ill. 2d at 504, 507. There, as here, the State alleged a single instance of abuse taking place on March 3, 1972, but the State did not file the charging instrument until May 13, 1976, which was beyond the applicable three-year statute of limitations. *Id.* at 504. Therefore, *Stone*, *McDade*, *Griffith*, and *Strait* do not support the State's claim.

¶ 27    At sentencing, the circuit court found that count VIII, which alleged criminal sexual assault based upon forcible penis to vagina contact, was a lesser-included offense of count IV, which alleged aggravated criminal sexual assault based upon the same forcible act but adding in the bodily harm of pregnancy. Consequently, the court then merged count VIII into count IV and imposed a consecutive 20-year sentence on the conviction on count IV. Defendant does not contest the sufficiency of the evidence supporting these convictions in his brief, and thus the conviction on the lesser included offense, count VIII, should stand, based upon the victim's testimony that the defendant assaulted her during the time frame in question but within the applicable statute of limitations. See *supra* ¶ 24.

¶ 28    The circuit court did not impose a sentence upon count VIII before the merger, resulting in a nonfinal conviction on that particular count. Since we are compelled to reverse defendant's conviction on count IV due to the State's carelessly drafted indictment, our jurisdiction is limited to remanding this cause for the court to impose a sentence upon count VIII. See *People v.*

*Relerford*, 2017 IL 121094, ¶ 75 (holding that the appellate court's jurisdiction over nonfinal convictions is "limited to ordering a remand for imposition of sentences on the lesser convictions"). Defendant's remaining aggregate sentence of 56 years' imprisonment is unaffected by this disposition.

¶ 29                                    CONCLUSION

¶ 30    We reverse defendant's conviction for aggravated criminal sexual assault (count IV), enter a conviction on criminal sexual assault (count VIII), and remand for sentencing on the single, lesser-included offense, count VIII.

¶ 31    Reversed and remanded with directions.

2022 IL App (1st) 200719

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CR-17697; the Hon. Charles P. Burns, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Jennifer L. Bontrager, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Tyler J. Cox, and Christine Danielson, Assistant State's Attorneys, of counsel), for the People. |