2023 IL App (1st) 211469-U

THIRD DIVISION
June 21, 2023

No. 1-21-1469

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the Circuit Court of<br>) Cook County. |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) No. 14 CR 732902 |
| | ) |
| CEDRYCK DAVIS, | ) |
| | ) Honorable Thomas J. Byrne, |
| Defendant-Appellant. | ) Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice McBride and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held:* The trial court erred in summarily dismissing defendant's petition for postconviction relief at the first stage. Reversed and remanded.

¶ 2    Defendant Cedryck Davis appeals from an order of the circuit court of Cook County summarily dismissing his petition for relief under the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). Defendant contends that he raised arguable claims of actual innocence, ineffective assistance of trial and appellate counsel, and insufficient evidence. We reverse the judgment of the circuit court and remand for further proceedings.

¶ 3                                    BACKGROUND

¶ 4     This court has detailed the underlying facts of this case in defendant and codefendant's consolidated direct appeal. See *People v. Thompson*, 2020 IL App (1st) 171265. We thus limit the facts to those that are pertinent to our discussion of the issues here.

¶ 5     Following a joint jury trial, defendant and codefendant Deandre Thompson were convicted of the attempted murders of Shawn Harrington and his 15-year-old daughter, Naja. Although Naja was uninjured, the shooting left Harrington paralyzed from the waist down. Defendant and codefendant were each sentenced to 59 years' imprisonment.

¶ 6     At trial, Harrington testified that, at around 7:45 a.m. on January 30, 2014, he was driving to drop off Naja (who was in the front passenger seat) at her school before proceeding on to his place of work. He stopped at a traffic light at an intersection and noticed a man (whom he identified in court as defendant) standing on the corner, pointing in his direction. Immediately thereafter, a gunshot came through the back window. Harrington turned and saw a second man standing a little farther away from defendant. Harrington then pushed his daughter down to cover her with his body. He then heard at least 10 additional shots. Harrington stated that he is permanently paralyzed because of the shooting. Harrington said that he later identified defendant in a lineup as the shooter, but he was unable to identify codefendant in a photo array. Harrington testified that he "focused" on defendant for about 5 to 10 seconds.

¶ 7     Naja testified that, at the time of the shooting, her dad was driving her to school, and as they approached a traffic light, she saw two young black men—whom she identified in court as defendant and codefendant—on the sidewalk. Naja said that she had no trouble observing their faces. Shortly thereafter, she heard bullets hitting the passenger door behind her. Her father pulled her down and covered her with his body, and she was not injured during the incident. She heard a

total of 10 to 15 shots. Naja subsequently identified defendant and codefendant in separate lineups. She stated that she saw both men for "a few seconds," and she later stated that she saw codefendant for five seconds.

¶ 8    An assistant state's attorney (ASA) interviewed Charles Molette regarding the shooting of Darren Dear that took place two days before the shooting of Harrington. The ASA memorialized Molette's statement, which was admitted as other crimes evidence and published to the jury. In the typed statement, Molette stated that he saw codefendant driving a burgundy van with defendant in the front passenger seat. When the van stopped, Molette saw codefendant run to the back of the van and fire a gun at Dear. Molette then saw defendant reach his hand out of the van and also fire at Dear. According to Molette's statement, codefendant then ran back to the driver's seat of the van and drove away.

¶ 9    At trial, Molette admitted that he was in custody due to a drug conviction. He then denied the entire statement taken by the ASA. He denied being in the vicinity of the Dear shooting, knowing Dear, being able to recognize defendant or codefendant in court, or meeting with police or the ASA. Molette conceded that his name was at the bottom of each page of the statement but stated that it was not his handwriting. Molette further acknowledged that one of the photos attached to the statement was a photo of himself, but when asked if the photo was taken at a police station, Molette said he did not recall going to the police station.

¶ 10    On cross examination, Molette agreed that one of the photos was of him in a police station and that various people had tried to talk to him and get him to sign the statement, but he refused. Molette further stated that, while he was in the police station, he insisted that he did not know about any shooting.

¶ 11    A forensic scientist with the Illinois State Police testified that a bullet recovered from the Dear shooting matched bullets recovered from the Harrington shooting. *Id.* ¶ 22.

¶ 12    The jury found defendant and codefendant guilty of the attempted first-degree murders of Harrington and Naja. *Id.* ¶ 29. It further found that both men personally discharged firearms during the offenses. *Id.* The trial court later sentenced defendant and codefendant each to 59 years' imprisonment. *Id.* On direct appeal, defendant and codefendant contended, *inter alia*, that the evidence was insufficient to convict them.[1]  *Id.* ¶ 32. We rejected this claim, however, and affirmed their convictions and sentences. *Id.* ¶ 116. Both the Illinois and United States supreme courts denied further review. See *People v. Thompson, et al.*, Nos. 126131, 126144 (Sept. 30, 2020) (Table), *cert. denied*, No. 20-6843 (Mar. 22, 2021) (Mem.).

¶ 13    On September 22, 2021, defendant, through counsel, filed his postconviction petition. Defendant claimed that he was actually innocent based upon his own affidavit and affidavits from his sister, Lashay Miller, and Molette. Defendant further claimed that his trial counsel was ineffective for failure to (1) investigate and present the witness testimony of Miller, (2) engage an expert in the field of eyewitness identification, and (3) request an accomplice witness jury instruction with respect to Molette's testimony. Defendant also claimed that appellate counsel was ineffective for failing to challenge the pretrial ruling on the propriety of defendant's arrest, which was based upon an investigative alert. Finally, defendant claimed that the evidence was insufficient to convict him.

¶ 14    Defendant attached multiple affidavits as exhibits to his petition. Miller's affidavit stated that, when she left her home at 3115 North Haussen Court in Chicago between 7:30 and 7:45 a.m.

_____

[1] On May 7, 2020, this court consolidated defendant's direct appeal (case no. 1-17-1266) into codefendant's direct appeal (case no. 1-17-1265).

4

on January 30, 2014, defendant was asleep on her couch "as always." Miller explained that defendant had been living with her because he and his girlfriend were having "up-and-down problems." Miller further averred that she relayed this information to defendant's trial counsel around the time of defendant's "second time court date bail hearing [*sic*]." Molette's affidavit stated that (1) he did not see defendant shoot anyone, (2) the police threatened to charge him with the shooting when Molette refused to identify defendant, and (3) his trial testimony was untrue. Rosa Givens, defendant's grandmother, provided an affidavit stating that she helped pay for defendant's attorney fees and that she was present when her daughter "hashed over matters" with trial counsel regarding whether to retain an expert witness "in the realm of eyewitness identification." Finally, defendant also attached two of his own affidavits. In his first affidavit, he stated that he was at Miller's house at the time of the shooting and that there were video recordings around the residence that would have shown that he had not left her residence at the time of the shooting. Defendant further stated that he and Miller told this to his trial counsel multiple times. In his second affidavit, defendant stated that he discussed hiring an expert witness in eyewitness identification but his attorney postponed consideration of the matter until "there was no possibility of retaining an expert" in that field.

¶ 15 On October 21, 2021, the trial court summarily dismissed defendant's petition as frivolous and patently without merit. This appeal follows.

¶ 16                                    ANALYSIS

¶ 17 On appeal, defendant contends that the trial court erred in summarily dismissing his postconviction petition at the first stage. Defendant argues that his trial counsel was at least arguably ineffective for failing to (1) investigate and present testimony from both Miller (who would have provided him an alibi) and Molette (who would have testified that his statement

identifying defendant as the shooter of Dear was the result of police coercion), (2) present an expert witness regarding eyewitness identification, and (3) request an accomplice jury instruction in light of Molette's affidavit (stating that he was threatened with being charged with the Harrington shooting if he refused to cooperate). In addition, defendant argues that he raised an arguable claim of actual innocence based upon Miller's and Molette's affidavits as well as his own. Defendant further argues that appellate counsel rendered arguably ineffective assistance for failing to raise the issue of the legality of his arrest, which was predicated upon an investigative alert. Finally, defendant argues that his claim of insufficient evidence was at least arguable, also based upon Miller's and Molette's affidavits.

¶ 18　　The Act allows a defendant to challenge a conviction or sentence for violations of federal or state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). An action for postconviction relief is a collateral proceeding rather than an appeal from the underlying judgment. *People v. Williams*, 186 Ill. 2d 55, 62 (1999). Principles of *res judicata* and waiver will limit the range of issues available to a postconviction petitioner " 'to constitutional matters which have not been, and could not have been, previously adjudicated.' " *People v. Scott*, 194 Ill. 2d 268, 273-74 (2000) (quoting *People v. Winsett*, 153 Ill. 2d 335, 346 (1992)). Accordingly, rulings on issues that were previously raised at trial or on direct appeal are *res judicata*, and issues that could have been raised in the earlier proceedings, but were not, will ordinarily be deemed waived. *Id.* at 274; 725 ILCS 5/122-3 (West 2020).

¶ 19　　Once a petitioner files a petition under the Act, the trial court must first, independently and without considering any argument by the State, decide whether the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2020). A postconviction petition is frivolous or patently without merit only if it "has no arguable basis either in law or in fact." *People*

6

*v. Hodges*, 234 Ill. 2d 1, 16 (2009); see also 725 ILCS 5/122-2.1(a)(2) (West 2020). A petition lacking an arguable basis in law or fact is one "based on an indisputably meritless legal theory or a fanciful factual allegation." *Hodges*, 234 Ill. 2d at 16. A claim completely contradicted by the record is an example of an indisputably meritless legal theory. *Id.* Fanciful factual allegations include those that are fantastic or delusional. *Id.* at 17.

¶ 20    To survive dismissal at this initial stage, the postconviction petition "need only present the gist of a constitutional claim," which is a low threshold that requires the petition to contain only a limited amount of detail. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). Additionally, a petition need not make legal arguments or cite to legal authority. *People v. Delton*, 227 Ill. 2d 247, 254 (2008). Moreover, all well-pleaded facts must be taken as true unless "positively rebutted" by the trial record. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). In addition, the trial court may not engage in any fact-finding or credibility determinations at the pleading stage of postconviction proceedings. *Id.* The *Hodges* court "reemphasized the liberal standard" used to evaluate *pro se* postconviction petitions, instructing courts to view them "with a lenient eye, allowing borderline cases to proceed to stage two." *People v. Carballido*, 2011 IL App (2d) 090340, ¶¶ 38-39. This standard applies regardless of whether the initial petition was filed *pro se* or through privately retained counsel. *People v. Smith*, 326 Ill. App. 3d 831, 836, 840 (2001). We review the summary dismissal of a postconviction petition *de novo*. *People v. Simms*, 192 Ill. 2d 348, 360 (2000). We first turn to defendant's ineffective assistance of trial counsel claim.

¶ 21    Both the federal and state constitutions guarantee criminal defendants the right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; see also *People v. Hartfield*, 2022 IL App (1st) 200719, ¶ 16. Claims of ineffective assistance of trial counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

See *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting *Strickland*). To establish ineffective assistance, a defendant must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant. *Id.* (citing *Strickland*, 466 U.S. at 687). Applied to a first-stage postconviction petition, "a petition alleging ineffective assistance may *not* be summarily dismissed if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced." (Emphases added.) *Hodges*, 234 Ill. 2d at 16-17. Deficient performance is performance that is objectively unreasonable under prevailing professional norms, and prejudice is found where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Petrenko*, 237 Ill. 2d at 496-97; *Strickland*, 466 U.S. at 690, 694. In the context of first-stage postconviction proceedings, it need only be arguable that, had counsel performed adequately, a "significantly less than 50% chance exists of a different outcome." *People v. Hayes*, 2022 IL App (1st) 190881-B, ¶ 39 (citing *Hodges*, 234 Ill. 2d at 16 (first-stage standard); *People v. Lucious*, 2016 IL App (1st) 141127, ¶ 45 (probability of prejudice)). "Where the statement of a witness is both exonerating and contradicts a State witness, it can be capable of producing a different outcome on retrial." *People v. Adams*, 2013 IL App (1st) 111081, ¶ 36 (citing *People v. Ortiz*, 235 Ill. 2d 319, 336-37 (2009)).

¶ 22 In this case, defendant has met the low standard for surviving the first stage of postconviction proceedings. Defendant's claim of ineffective assistance of trial counsel is predicated upon, *inter alia*, counsel's purported failure to investigate and call his sister, Miller, as an alibi witness. Miller's affidavit indicated that, when she left for work at "about 7:30 a.m. [to] 7:45 a.m." on the morning of the shooting, Miller saw defendant, who had been living with her, asleep on her couch at her residence on North Haussen Court. Miller concluded that defendant

could not have been at the shooting because he was at her house that morning. Miller further stated in her affidavit that she had provided this information to his attorney at defendant's "second time court date bail hearing [*sic*]." One of defendant's affidavits stated that (1) he was at his sister's house at the time of the shooting, (2) he and his sister informed his trial attorneys of this fact multiple times, and (3) there was "video footage" from cameras at and around his sister's apartment showing that he was at her residence at the time of the offense.

¶ 23   When considered with the evidence adduced at trial, Miller's affidavit indicates that she would have provided defendant with an alibi, contradicting the identification testimony of Harrington and Naja. It is well established that trial counsel's failure to interview witnesses may indicate ineffective assistance of counsel, "particularly when the witnesses are known to trial counsel and their testimony may be exonerating." (Internal quotation marks removed.) *People v. Upshaw*, 2017 IL App (1st) 151405, ¶ 39 (quoting *People v. Davis*, 203 Ill. App. 3d 129, 140-41 (1990) (quoting *People v. Greer*, 79 Ill. 2d 103, 123 (1980))). It is therefore at least arguable that trial counsel's performance fell below an objective standard of reasonableness, which meets the first prong of *Strickland* at the first stage of postconviction proceedings.

¶ 24   Although the State argues that trial counsel's decision not to call Miller to testify "aligned with a trial strategy based on reasonable doubt rather than alibi," the State further concedes that our supreme court has held that it is inappropriate to consider trial strategy at the first stage of postconviction proceedings. *People v. Tate*, 2012 IL 112214, ¶ 22 (holding that the State's "strategy argument" is more appropriate for second-stage proceedings). We are bound by this supreme court holding, so the State's reliance upon various contrary appellate opinions issued after *Tate*—such as, *People v. Knapp*, 2019 IL App (2d) 160162, *People v. Brown*, 2017 IL App (1st) 150203, and *People v. Shipp*, 2015 IL App (2d) 131309—is misplaced.

¶ 25    The State further argues that, even had Miller's testimony been presented, the jury still would have weighed this testimony against that of Harrington and Naja. The State's arguments in this regard, however, do not alter our holding because they go to credibility, a determination that may not be made during a first stage postconviction proceeding. *Coleman*, 183 Ill. 2d at 385; *People v. Scott*, 2011 IL App (1st) 100122, ¶ 23.

¶ 26    In addition, it is at least arguable that, but for counsel's errors, there is a reasonable probability that the result of defendant's trial would have been different. The State's case hinged upon the identification testimony of Harrington and Naja, both of whom observed defendant and codefendant for mere seconds. There was no physical evidence directly linking defendant to the shooting, and defendant did not make an inculpatory statement. At the first stage of proceedings, all well-pleaded facts must be taken as true unless positively rebutted by the trial record. *Coleman*, 183 Ill. 2d at 385. In addition, we may not engage in any fact-finding or credibility determinations. *Id.* Here, Miller's proposed testimony is both exonerating and contradicts a State witness, so it is capable of producing a different outcome on retrial. See *Adams*, 2013 IL App (1st) 111081, ¶ 36. Furthermore, to meet the second prong of *Strickland* in the context of first-stage postconviction proceedings, it need only be arguable that, had counsel performed adequately and presented Miller's testimony, a "significantly less than 50% chance" exists of a different outcome. *Hayes*, 2022 IL App (1st) 190881-B, ¶ 39. On these facts and in light of the admittedly low threshold at the first stage, defendant's petition met the second prong of *Strickland*, as well. The trial court therefore erred in summarily dismissing defendant's petition.

¶ 27    Since defendant's petition has met the low threshold required to allege a claim of ineffective assistance of counsel at the first stage, we need not address his remaining claims because the Act does not permit piecemeal dismissal of individual claims at this stage. See *People*

*v. Cathey*, 2012 IL 111746, ¶ 34; *People v. Rivera*, 198 Ill. 2d 364, 370-71 (2001).  Instead, under

the Act, the court must "docket the *entire* petition, appoint counsel, if the petitioner is so entitled,

and continue the matter for further proceedings in accordance with sections 122-4 through 122-6."

(Emphasis in original.)  *Id.* at 371.

¶ 28                                    CONCLUSION

¶ 29     The trial court erred in summarily dismissing defendant's petition for postconviction relief

at the first stage.  Accordingly, we reverse the judgment of the circuit court of Cook County and

remand this cause for further proceedings.

¶ 30     Reversed and remanded.