2025 IL App (1st) 232301-U

FIFTH DIVISION
May 16, 2025

No. 1-23-2301

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 17697 |
| | ) | |
| CRAIG HARTFIELD, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Oden Johnson and Mitchell concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We vacate defendant's sentence on one count of criminal sexual assault and remand for resentencing on that count where the trial court erred in denying defendant's request to proceed *pro se* at the sentencing hearing.

¶ 2     After a bench trial, defendant Craig Hartfield was convicted of five counts of various sexual assault offenses and sentenced to an aggregate term of 76 years in prison. Following his direct appeal, this court remanded for resentencing on the lesser-included offense for one of those five counts. *People v. Hartfield*, 2022 IL App (1st) 200719, ¶ 29. The only issue before us in this appeal is whether the court deprived Mr. Hartfield of his right to represent himself at the sentencing hearing after the remand. Because the record reflects that Mr. Hartfield made an unequivocal

request to represent himself, we vacate his 10-year sentence and remand for a new sentencing hearing on count 8.

¶ 3                                    I. BACKGROUND

¶ 4      Following a 2019 bench trial, Mr. Hartfield was found guilty of eight sexual assault offenses. The trial court merged three of the counts and sentenced Mr. Hartfield to an aggregate term of 76 years in prison on the remaining five counts. Relevant here, the court merged count 8— alleging criminal sexual assault—into count 4, which alleged aggravated criminal sexual assault. The court imposed a 20-year sentence on count 4.

¶ 5      On direct appeal, this court reversed Mr. Hartfield's conviction for aggravated criminal sexual assault on count 4 and remanded for sentencing on the lesser-included offense of criminal sexual assault in count 8. *Hartfield*, 2022 IL App (1st) 200719, ¶ 31.

¶ 6      We go into some detail about what occurred on that remand because there was a good deal of colloquy around Mr. Hartfield's desire to represent himself. On September 20, 2022, before the same judge who conducted the bench trial, an assistant public defender appeared for Mr. Hartfield and informed the court that Mr. Hartfield did not want to accept appointed counsel. The court responded:

> "Let me give you a history. You probably don't know about this, [counsel]. Mr. Hartfield for a long time was stating that he could not talk, he could not communicate, he could not understand. He was sent up to the 10th floor and found that he was malingering. So the situation I have here is if this man is going to refuse to even talk, how can I let him represent himself?"

¶ 7      Defense counsel said Mr. Hartfield was "under the impression that if he write[s] things out, that will be sufficient," and that Mr. Hartfield had also requested a sign language interpreter. The

court noted that they had gone "through a full blown trial with him sitting in court" and at "no time did it ever appear that he did not understand what was going on, could not hear, could not communicate." The court therefore expressed skepticism "about the veracity of information" Mr. Hartfield was sharing with counsel. On its own motion, the court ordered a behavioral clinical examination to assess Mr. Hartfield's fitness to proceed and to represent himself at resentencing.

¶ 8    On October 19, 2022, Mr. Hartfield appeared with a sign language interpreter, who informed the court that Mr. Hartfield told her he was able to hear. The interpreter reported that Mr. Hartfield could sign with "limited fluency" and was "able to communicate and spell any signs or words" that he did not know. The trial court referenced a January 2018 report from Forensic Clinical Services that stated Mr. Hartfield's "refusal to participate in the evaluation conducted was volitional in nature and not because of any psychiatric occurrence." The court let the interpreter stay on the case but stated, "I just wonder if we are wasting court resources." Mr. Hartfield responded, "I have learned to sign so that I can speak in court."

¶ 9    Defense counsel informed the court that Forensic Clinical Services needed Mr. Hartfield's Department of Corrections records before it could complete the court-ordered examination. Mr. Hartfield objected and reiterated that he wanted to proceed *pro se*. The court told Mr. Hartfield that the examination was necessary "to determine whether [he] c[ould] legally represent [him]self" because the court had "a *bona fide* doubt as to [his] fitness." Mr. Hartfield said, "This is wrong," and the court responded, "Well, again you and I disagree. The appellate court disagrees, that's fine. If you are legally competent to represent yourself, sir, I will allow you to."

¶ 10    At the next court date, on November 23, 2022, Mr. Hartfield again questioned the need for an examination and asked whether it was because he wanted to proceed *pro se*. The court answered, "I don't know whether you can go *pro se* or not. *** After the doctors come back with

their report whether or not you're fit, I'll determine whether you can represent yourself. If you're unfit to stand trial, you're unfit to represent yourself."

¶ 11    On January 5, 2023, the court reviewed a letter from Dr. Fidel Echevarria, a staff psychiatrist at Forensic Clinical Services, who opined that Mr. Hartfield was fit to stand trial and to represent himself. Although Dr. Echevarria reported that Mr. Hartfield "refused to engage in a formal assessment of his understanding about fitness-related information," he also said that no records indicated Mr. Hartfield had any mood disorder, psychotic disturbance, or cognitive impairment that would compromise his ability to understand the charges and nature of the proceedings. In addition, Dr. Echevarria stated that Mr. Hartfield twice signed that he wanted an independent expert. Dr. Echevarria noted that "[t]he objective evidence examined suggest[ed] Mr. Hartfield's communication preference was volitional."

¶ 12    The trial court stated it was "not sure exactly how to interpret this," but that if Mr. Hartfield wanted an independent expert, "then maybe we need to get him an expert to see whether or not he is fit." The trial judge said:

> "By being let's just say a little uncooperative he is complicating matters. I could go on this report right now, but he wants his own independent expert, which assumes to me, number one, he may not understand the charges and the proceedings against him or, number two, that he is looking for another opinion to say that he is unfit."

Defense counsel reported that Mr. Hartfield no longer wanted an independent expert. The following exchange then occurred:

> "[THE COURT:] Why are we making things so difficult here? This man can represent himself if I find under the case law, I think it is [*Faretta v. California*, 422 U.S. 806 (1975)], that he is competent to represent himself. I can't make that determination if

he wants an independent examination. That's what he has told the doctors. He is flip-flopping like a fish out of water here.

[ASSISTANT PUBLIC DEFENDER]: I understand that.

[MR. HARTFIELD]: I do not trust your expert. Thanks.

THE COURT: I suggest that you maybe send him to your own expert then.

[MR. HARTFIELD]: But now that I can go *pro se*, I do not need to be examined.

THE COURT: I want him examined. That's what he told the doctors. I want him examined.

[ASSISTANT PUBLIC DEFENDER]: Your Honor, if I can have a sta—

[MR. HARTFIELD]: Your own doctor says I am fine.

THE COURT: But you don't trust that doctor.

[MR. HARTFIELD]: But you do.

THE COURT: Four or five years from now this is going to be an issue if he is convicted."

The court ordered an independent examination and continued the case.

¶ 13    At the next court date, on February 2, 2023, defense counsel reported he had found an expert to conduct the independent examination. The following exchange then occurred:

"THE COURT: Okay. All right. Mr. Hartfield, apparently Mr. Roleck, your attorney, has found someone to evaluate you that I need with regard to a finding that you're fit to represent yourself. You chose for whatever reason. I'm not sure exactly why.

[MR. HARTFIELD]: That is not my lawyer.

THE COURT: He is until I tell you you can represent yourself, sir.

[MR. HARTFIELD]: The [behavioral clinical examination] was proof that I can

represent myself.

THE COURT: Well, I don't think that's really true because you didn't cooperate with them and you kept saying you wanted your own independent evaluation. You asked for it. Nobody else. So Mr. Roleck is going to get you your own independent evaluation so after we get this independent evaluation I'll decide whether you can represent yourself.

[MR. HARTFIELD]: I can—

THE COURT: This is your request.

[MR. HARTFIELD]: —not want it now.

THE COURT: Okay. Well, you're going to have it now okay. Because I can't find—I can't allow you to represent yourself because the reason—

[MR. HARTFIELD]: Your—

THE COURT: Okay.

[MR. HARTFIELD]: —doctor—

THE COURT: The doctor, you didn't cooperate.

[MR. HARTFIELD]: Look at the report.

* * *

THE COURT: Okay. First off, you told the doctor you wanted your own independent evaluation. You told him.

[MR. HARTFIELD]: That is—that was for you not being trustworthy.

THE COURT: Okay. I'm going to read from this letter here and if we need to get sworn testimony I will.

This is a letter from Dr. Echevarria *** a staff psychiatrist, Forensic Clinical Services dated—stamped at least January 5th.

He refused to engage in a formal assessment of his understanding about fitness related information. Mr. Harfield nevertheless twice signed, I want an independent expert. That's what they're saying. You want an independent expert.

[MR. HARTFIELD]: But what was the couns—conclusion?

THE COURT: The conclusion was that they had to guess because you wouldn't cooperate.

[MR. HARTFIELD]: No.

THE COURT: Yeah. Yes, it was.

[MR. HARTFIELD]: It was that I am fit.

THE COURT: Okay. We can do this one of two ways. I can send you back to Dr. Echevarria. You can cooperate with him and maybe he'll come up with that same opinion that on the limited information you may or may not be fit, or I can send you to the expert that your attorney—your current attorney right now is recommending. That's up to you. You put yourself in this situation, Mr. Hartfield. You put yourself in this situation.

[MR. HARTFIELD]: You did. Not me.

THE COURT: I did not what?

[MR. HARTFIELD]: Wrong. You did. Not me.

THE COURT: I'm not the one that refused to cooperate. Okay.

* * *

THE COURT: Until this issue is resolved you are not representing yourself."

The court continued the case.

¶ 14   The independent examination of Mr. Hartfield was conducted on May 8, 2023, and the court held a hearing on Mr. Hartfield's fitness on July 24, 2023.

¶ 15    At the hearing, the defense called Dr. Michael Byrne, an assistant professor of psychiatry, to testify regarding the behavioral clinical examination he conducted with respect to Mr. Hartfield. The court qualified Dr. Byrne as an expert in forensic psychiatry. Dr. Byrne explained he had met with Mr. Hartfield and reviewed his medical and disciplinary records, including his prior examination. He opined that Mr. Hartfield did not have any mental condition or disability that would impede his ability to stand trial or to represent himself. Specifically, Mr. Hartfield "displayed adequate knowledge of courtroom procedure and personnel" and "knowledge of the charges and allegations against him."

¶ 16    Dr. Byrne cautioned, however, that Mr. Hartfield exhibited two behavioral issues that "may make it logistically difficult": he was "selectively mute" and communicated with rudimentary, self-taught signing that was "cumbersome," and he tended to refuse to answer questions if he did not feel in control of the conversation. These issues were not due to any serious mental illness or condition "in any diagnosable way." Mr. Hartfield was not deaf or hard of hearing; rather, he had stopped speaking a few months after his arrest in 2017 and began communicating solely by writing or signing. Dr. Byrne was able to speak to Mr. Hartfield "as one would normally," and Mr. Hartfield responded with the aid of an interpreter.

¶ 17    The court found that Mr. Hartfield was "fit to stand trial" and "apparently, at least preliminarily, a discussion is that he has the ability, albeit maybe limited, to represent himself." Defense counsel informed the court that Mr. Hartfield wanted to consult with an attorney before making the decision about whether to proceed *pro se*. The judge said, "I'm not going to make a determination right now as to whether I'm going to allow [Mr. Hartfield] to represent [him]self," and told Mr. Hartfield he could consult with an attorney. Mr. Hartfield said that his current lawyer had not met with him to talk about his case. In response, defense counsel explained that it was his

understanding that the case was only before the court on resentencing and said, "Much of what Mr. Hartfield wanted to discuss went beyond that issue, so I informed him it wasn't relevant to why the case was in front of Your Honor and that Your Honor has no jurisdiction beyond resentencing him on this count." Counsel added, "[F]rom the time I've been on the case, Mr. Hartfield has indicated a desire to go *pro se*. We were just attempting to work on the issue of fitness which we resolved today."

¶ 18    The court explained to Mr. Hartfield that the case was remanded for resentencing only and the evidence as to guilt would not be relitigated, then said that he could have a few weeks to decide whether he wanted to be represented by counsel. Mr. Hartfield said he wanted the continuance and made clear that he wanted "to have the option to proceed *pro se*." The court responded, "Sir, you always have that option. It's not a real smart option and it's not a real smart option in your situation, but you have that option, sir." The court allowed a three-week continuance, telling Mr. Hartfield, "You better think long and hard about what you want to do because there's some serious consequences with regard to the sentencing." Mr. Hartfield said he understood.

¶ 19    At the next court date on August 16, 2023, defense counsel reported to the court that Mr. Hartfield wanted to wait for the PSI before deciding whether to represent himself and that he also wanted his case file. Mr. Hartfield said, "I want to go *pro se*, but I want to wait for the case file." The court responded:

> "Sir, that not—it's not either or. Either you want to represent yourself and I'll allow you to represent yourself or you would have to be represented by the public defender. This is not contingent on receiving a case file. It is not contingent upon having a PSI returned. You have the absolute right to represent yourself if I allow you to do so."

The court expressed concern over the delays and told Mr. Hartfield, "You're deciding today." The

following exchange then occurred:

"[MR. HARTFIELD]: [W]hy are you hurrying me?

THE COURT: Sir, I would think hurrying you is if I give you an hour to make a decision. I gave you over a year to make a decision. Okay.

[MR. HARTFIELD]: No—

THE COURT: Public defender is representing him. If he makes an unequivocal demand is what he needs to do, an unequivocal demand to represent himself, I will address that, okay? We are moving forward on this case."

The court continued the case pending preparation of a new PSI.

¶ 20    On October 30, 2023, the matter proceeded to sentencing. At the outset, defense counsel reported, "In speaking with Mr. Hartfield prior to his entry into the courtroom, he indicated to me that he would like to do this part *pro se*." The court responded, "What was the previous ruling on this? He refused to cooperate with your evaluator; is that correct?" Defense counsel clarified that Mr. Hartfield had refused to cooperate with Forensic Clinical Services but did cooperate with the independent expert and recalled that the psychiatrist had testified and that "[t]here was a finding of fitness to stand trial." The court then stated:

"In this circumstance, [Mr. Hartfield] is all over the board here as to whether he's going to cooperate. We tried to get him evaluated not only for fitness to be sentenced but also fitness to represent himself. He chose not to cooperate. I, frankly, don't understand whether or not this is something that comes from some cognitive defect or some type of disease defect, whether this is volitional or not.

[Mr. Hartfield] is looking at a substantial period of time in the penitentiary here. With me being uncertain as to whether or not he can represent him[self] *pro se*, I'm going

to require the Public Defender to stay on this case.

I will also note that we also tried to get a PSI after the case was remanded, and he refused to cooperate."

¶ 21   Mr. Hartfield disagreed that he had refused to cooperate with the PSI interview. The court then reviewed the updated PSI, which reflected that Mr. Hartfield had refused to answer almost all of the questions at the interview. The court noted that Mr. Hartfield had stated to the investigator that he was "not happy about the outcome of the case" and that he "d[id] not have any control over the events in his life at th[at] point."

¶ 22   The State asked for the maximum term of 15 years on the criminal sexual assault count. Defense counsel requested the minimum of four years, noting that Mr. Hartfield would not have the opportunity to reoffend due to the overall length of his aggregate sentence. Defense counsel also noted that Mr. Hartfield was religious, had some family support, and had no significant prior criminal history.

¶ 23   The court found the maximum sentence was justified but, because Mr. Hartfield was already serving a substantial amount of time, sentenced him to 10 years in prison on count 8, to run consecutive to his other sentences, for a total of 66 years. It denied Mr. Hartfield's motion to reconsider.

¶ 24                               II. JURISDICTION

¶ 25   Mr. Hartfield was resentenced on October 30, 2023, and his motion to reconsider that sentence was denied the same day. He timely filed his notice of appeal on November 16, 2023. We have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. March 12, 2021), governing appeals from final judgments in criminal cases.

¶ 26                                    III. ANALYSIS

¶ 27    On appeal, Mr. Hartfield argues that the trial court deprived him of his right to represent himself after he repeatedly and unequivocally asked to proceed *pro se*.

¶ 28    Mr. Hartfield acknowledges that he failed to object to the court's denial of his request in his motion for reconsideration and therefore forfeited the issue. *People v. Hunt*, 2016 IL App (1st) 132979, ¶ 15. However, as a denial of the right of self-representation is a structural error that, if found, requires automatic reversal (*id.* ¶¶ 13-15), Mr. Hartfield properly asks that we review the issue as plain error.

¶ 29    A criminal defendant has a constitutional right to represent himself if he knowingly and intelligently relinquishes his right to counsel. *People v. Baez*, 241 Ill. 2d 44, 115-16 (2011) (citing *Faretta*, 422 U.S. at 835). The request must be clear and unequivocal. *Id.* at 116. In determining whether a request is clear and unequivocal, courts look at "the overall context of the proceedings" to decipher "whether the defendant truly desires to represent himself and has definitively invoked his right of self-representation." *People v. Burton*, 184 Ill. 2d 1, 22 (1998).

¶ 30    The right of self-representation is not absolute, however, and may be denied where the defendant is unable to make a knowing and intelligent waiver of his right to counsel. *People v. Ward*, 208 Ill. App. 3d. 1073, 1084 (1991). Unless a defendant has a mental disability that incapacitates him from making a knowing and intelligent waiver, the court must honor his choice to represent himself. *People v. Perkins*, 2018 IL App (1st) 133981, ¶ 47. We review a trial court's denial of self-representation for an abuse of discretion. *Baez*, 241 Ill. 2d at 116. The court abuses its discretion if its ruling is arbitrary and without logical basis. *Hunt*, 2016 IL App (1st) 132979, ¶ 16.

¶ 31    Mr. Hartfield argues the trial court had no basis to deny his repeated requests to represent

- 12 -

himself, and its denial was therefore a structural error requiring reversal. In response, the State argues only that Mr. Hartfield's requests were not clear and unequivocal because his August 16, 2023, request was conditional on receiving his case file and his October 30, 2023, request was made through counsel.

¶ 32   Although we appreciate the trial court's considerable efforts to assure itself that Mr. Hartfield was fit to waive counsel and to determine whether that was what Mr. Hartfield wanted to do, the record shows that, ultimately, Mr. Hartfield made several requests including an unambiguous request through counsel to represent himself, which the court failed to honor. This requires that we remand this case for resentencing on count 8 a second time.

¶ 33   At the September 20, 2022, court date, Mr. Hartfield, through counsel, clearly stated that he did not want appointed counsel. Mr. Hartfield repeated his desire to proceed *pro se* himself clearly and unequivocally at the next court date on October 19, 2022. The record reflects that at this time the trial court had "a *bona fide* doubt" as to Mr. Hartfield's fitness to represent himself. Based on that *bona fide* doubt, the trial court reasonably ordered the first behavioral clinical examination and—based on both Mr. Hartfield's refusal to participate in the first examination and his demands for an independent examination—then ordered the second, independent, behavioral clinical examination before holding a hearing on Mr. Hartfield's fitness. While the examination results were pending, Mr. Hartfield continued to express his desire to go *pro se*, even telling the trial court the second examination was no longer necessary because the first examiner had found him fit.

¶ 34   Once the trial court made its finding that Mr. Hartfield was "fit to stand trial," it is arguable Mr. Hartfield equivocated in his request to go *pro se*. At the July 24, 2023, hearing, counsel informed the court that Mr. Hartfield wanted to delay the decision in order to consult an attorney,

and at the August 16, 2023, court date, counsel said Mr. Hartfield still wished to proceed *pro se* but wanted to wait until after receiving an updated PSI and his case file. Mr. Hartfield himself also said he wanted to go *pro se* but wanted the case file. However, at that August 16, 2023, court date, the court insisted that Mr. Hartfield make a decision but did not give Mr. Hartfield a chance to respond, cutting him off and ordering defense counsel to remain on the case.

¶ 35 Then, at the October 30, 2023, hearing, Mr. Hartfield requested to proceed *pro se*, through defense counsel who informed the court that Mr. Hartfield "would like to do this part *pro se*." In response, the court said that it was ordering the public defender to continue representing Mr. Hartfield. The court's failure to engage with Mr. Hartfield at that time about the expressed desire to represent himself requires that we remand this case a second time for resentencing on count 8.

¶ 36 The State responds that the October 30, 2023, request cannot be considered clear and unequivocal because it was made through counsel. It is true that a waiver of counsel is a right that is personal to the defendant (*People v. Bingham*, 364 Ill. App. 3d 642, 649 (2006)) and can only be accepted after the court has acted "by addressing the defendant personally"(Ill. S. Ct. R. 401(a) (eff. July 1, 1984)). But this certainly does not mean that the court can ignore a request, like this one, that was made on behalf of the defendant through counsel who, at that point, the court had not allowed to withdraw. Rather, the court needed to then address Mr. Hartfield personally and determine if he wanted to waive counsel. Mr. Hartfield was not required to speak up and protest after the court announced its decision. See *Hunt*, 2016 IL App (1st) 132979, ¶ 26 ("A defendant need not futilely request to represent himself.").

¶ 37 We also consider what appears to be the court's ongoing concern about Mr. Hartfield's competency. At the hearing on October 30, 2023, the court said that Mr. Hartfield "chose not to cooperate" when it evaluated him for fitness, did not know whether it was due to a "cognitive

defect or some type of disease defect," and that it was "uncertain as to whether or not [Mr. Hartfield] c[ould] represent him[self] *pro se*." Although the court had found Mr. Hartfield "fit to stand trial," the court's statements at the sentencing hearing suggest that it was not clear whether this meant Mr. Hartfield had the capacity to waive counsel. However, "[c]ompetence to waive counsel is measured by the same standard as competence to stand trial." *People v. Redd*, 173 Ill. 2d 1, 23 (1996). Therefore, the court's understandable concern about Mr. Hartfield's competency—which it had taken time to have assessed by two experts—was not a basis on which the court could properly deny Mr. Hartfield's request to represent himself.

¶ 38    We are fully sympathetic with the trial court's building frustration at the time it rejected Mr. Hartfield's final request for self-representation. Mr. Hartfield had refused to speak but then demanded to represent himself. He had refused to cooperate with the first examination and demanded an independent examination, only to argue with the court about the necessity of an independent examination when the initial one reached the result he preferred. He had then made comments indicating that he preferred to delay self-representation until after a new PSI was conducted and he had received his case file. All of this, in our view, made it perfectly reasonable for the court to inform Mr. Hartfield at the August 16, 2023, court date that it would not delay the issue further and that he needed to decide, then and there, whether he wanted to represent himself. But when Mr. Hartfield attempted to do just that, the court cut him off and summarily ordered defense counsel to continue to represent him. And when Mr. Hartfield informed the court just before the sentencing hearing, through the same counsel that the court had ordered to represent him, that he wished to proceed *pro se*, the court denied that request without following up with Mr. Hartfield himself. On this record, we have no choice but to remand for resentencing.

¶ 39    Although we are well aware that resentencing on this single count can only minimally

affect the total prison time Mr. Hartfield is facing—given that any sentence he receives for count 8 on remand will run consecutively to the 56-year sentence he has already received for the other counts—that does not obviate the need for a remand in this case. The right to represent oneself is deemed so significant that its denial constitutes a structural error, one that "serves to erode the integrity of the judicial process and undermine the fairness of [the] defendant's trial." (Internal quotation marks omitted.) *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010). Regardless of the practical consequences of this resentencing, Mr. Hartfield's right to represent himself was erroneously denied, and we must remand.

¶ 40                                    IV. CONCLUSION

¶ 41    For these reasons, we vacate Mr. Hartfield's sentence on count 8 and remand for the trial court to hold a new sentencing hearing in accordance with this decision.

¶ 42    Vacated and remanded for resentencing.